```
1  JAMES P. STONEMAN, II, (Bar No. 94523)
   LAW OFFICES OF JAMES P. STONEMAN, II
2  100 West Foothill Blvd.
   Claremont, CA  91711
3  Telephone (909) 621-4987
   Facsimile (909) 624-1427
4

5  Attorney for Plaintiff
   JAMES SMITH
```

FILED
2010 NOV 17 AM 11:55
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

'10 CV 2367   L-BGS

| | |
|---|---|
| JAMES SMITH, | CASE NO. |
| Plaintiff, | |
| vs. | COMPLAINT FOR DAMAGES FOR BREACH OF CONTRACT AND DEMAND FOR JURY TRIAL |
| EARL SCHEIB, INC., EARL SCHEIB REALTY, and DOES 1 through 10, inclusive, | |
| Defendants. | |

### I.   JURISDICTION, VENUE, & THE PARTIES

1. Defendant EARL SCHEIB INC. (hereafter "ESI" or "SCHEIB") was and is a corporation incorporated under the laws of the State of Delaware with its principal place of business located in the City and County of San Diego, State of California.

2. Defendant EARL SCHEIB REALTY CORP. ("ESRC") is a corporation incorporated under the laws of the State of California with its principal place of business located in the City and County of San Diego, State of California. At all material times, ESRC was sufficiently related to ESI through common financing and management to constitute it an "affiliated

entity" as that phrase has been used by ESI in the Release Agreement alleged herein and attached as Exhibit A.

3. Plaintiff JAMES SMITH is a resident of the City of Westminster, County of Carroll, State of Maryland.

4. The true names and capacities of defendants named herein as Does 1 through 10 are unknown to plaintiff who therefore sues such defendants by fictitious names. Plaintiff will amend his Complaint when such true names and capacities have been ascertained. At all material times Does 1 through 10 were employees and agents of defendant ESI, acting in a managerial capacity within the scope of their authority, except as otherwise alleged herein, whose actions and conduct within the scope of their authority were known to, authorized and ratified by BMWD.

5. The jurisdiction of this Court over the subject matter of this action is predicated upon 28 U.S.C. § 1332. Jurisdiction in this Court is proper due to the fact that plaintiff is a resident of the State of Maryland, defendants ESI and ESRC are residents of the State of California, and the amount in controversy is in excess of $75,000. The actual amount in controversy is the sum of $186,722.63 plus interest, costs and attorney's fees.

6. Venue in this, the United States District Court for the Southern District of California, is proper under the provisions of 28 U.S.C. §§ 1391(a)(1) because all Defendants reside in the City of San Diego, State of California.

## II FACTUAL ALLEGATIONS

7. Plaintiff was employed by ESI as an executive from at

1 least 1987 until his termination on May 7, 2010.

2     8. On or about May 1, 1987, plaintiff and ESI entered into an Executive Income Agreement, the primary purpose of which was to provide deferred income benefits to plaintiff at a future time. The Executive Income Agreement was modified on or about January 1, 2008, when the parties entered into a 2008 Supplemental Executive Income Agreement.

    9. On or about May 7, 2010, plaintiff's employment was terminated by ESI.

    10. On or about May 17, 2010, ESI presented to plaintiff a Release Agreement, a copy of which is attached hereto as Exhibit A. Plaintiff and ESI's President, JOHN SCHLICH, signed the Release Agreement on or about June 2, 2010.

    11. ESI entered into the Release Agreement on behalf of itself and "its affiliated entities." Pursuant to the terms of the Release Agreement, ESI obtained for itself and all affiliated entities a comprehensive general release of all claims relating to plaintiff's employment with ESI, and agreed to pay a Termination Income Benefit in the amount of $186,722.63, exchange for such release. The Termination Income Benefit was due on the fifteenth day following the 60 day period in which plaintiff was required to execute and refrain from revoking his agreement. Therefore, the Termination Income Benefit was due on or about August 14, 2010.

    12. Defendant ESI has failed to pay any portion of the Termination Income Benefit. None of its affiliated entities have made such payment. Therefore, ESI and its affiliated entities are in breach of the Release Agreement and owe plaintiff the

LAW OFFICES OF
JAMES P. STONEMAN, II
100 WEST FOOTHILL BOULEVARD
CLAREMONT, CALIFORNIA 91711
TELEPHONE (909) 621-4987

LAW OFFICES OF
JAMES P. STONEMAN, II
100 WEST FOOTHILL BOULEVARD
CLAREMONT, CALIFORNIA 91711
TELEPHONE (909) 621-4987

Termination Income Benefit and accrued interest thereon until paid in full.

13. The Release Agreement provides that the prevailing party in any litigation arising out of the Release Agreement is entitled to recover his/its attorney's fees.

14. Plaintiff has necessarily engaged legal counsel to pursue payment of the Termination Income Benefit and/or any other appropriate damages resulting from ESI's breach of the Release Agreement.

15. As a direct and proximate result of the conduct of defendants, plaintiff has sustained substantial economic losses, including the loss of the Termination Income Benefit.

### III PLAINTIFF'S CAUSES OF ACTION

#### COUNT ONE

#### (Against All Defendants for Breach of Contract)

16. Plaintiff realleges each and every allegation contained in paragraphs 1-15, above, as though set forth again in full.

19. In so acting, defendants ESI and ESRC, its affiliated entity, have breached the Release Agreement.

### IV PRAYER FOR RELIEF

WHEREFORE plaintiff prays for judgment against defendants, and each of them, as follows:

1. For compensatory economic damages according to proof (estimated $186,722.63);

2. For prejudgment interest;

3. For an award of attorney's fees; and

3. For costs of suit, and for such other and further relief

////

as the court may deem just and proper.

DATE: November 17, 2010

                              Law Offices of
                              JAMES P. STONEMAN II

By: _____
                              JAMES P. STONEMAN II
                              Attorney for Plaintiff

**DEMAND FOR JURY TRIAL**

Plaintiff hereby requests that this matter be tried to a jury pursuant to the terms of F.R.C.P. 38.

DATE: November 16, 2010

                              Law Offices of
                              JAMES P. STONEMAN II

By: _____
                              JAMES P. STONEMAN II
                              Attorney for Plaintiff

LAW OFFICES OF
JAMES P. STONEMAN, II
100 WEST FOOTHILL BOULEVARD
CLAREMONT, CALIFORNIA 91711
TELEPHONE (909) 621-4987

# EXHIBIT A

May 17, 2010

James E. Smith, Jr.
943 Westcliff Ct.
Westminister, MD 21158

Dear Mr. Smith:

This letter will set forth the terms of the Release Agreement between you and Earl Scheib, Inc. and its affiliated entities and replaces the letter to you dated May 7, 2010. Earl Scheib, Inc. and its affiliated entities (collectively "ES") and James E. Smith, Jr. ("Employee") agree as follows:

1. Employee's employment with ES was terminated effective May 7, 2010. Pursuant to the 2008 Supplemental Executive Income Agreement effective as of January 1, 2008 by and between Earl Scheib, Inc. and Employee (the "SEIA Agreement"), Employee is entitled to a Termination Income Benefit as defined therein, in connection with Employee's termination, in exchange for his/her execution of the release set forth below.

2. Pursuant to the SEIA, as consideration for Employee's agreement to the release set forth below, ES will provide him/her with a Termination Income Benefit payment of One Hundred Eighty Six Thousand Seven Hundred Twenty Two Dollars and Sixty Three Cents ($186,722.63), minus the usual payroll deductions ("Termination Income Benefit") to be paid on the fifteenth (15th) day following the 60-day period in which the Employee is required to execute and not revoke this Release Agreement. This Termination Income Benefit will be provided to Employee only if he/she executes and returns this Agreement to ES. Employee is not eligible for and will not receive this Termination Income Benefit unless he/she executes this Agreement. The Agreement by ES to pay Employee Termination Income Benefit is absolutely conditional and contingent upon the effective release of all claims of every kind, known or unknown, which have been asserted or could be asserted against ES, including, without limitation, any and all claims for payment of wages. Employee acknowledges that he/she has been paid all amounts due to him/her as commissions or wages and accrued but unused vacation pay. Employee understands that he/she is entitled to be paid all wages and accrued but unused vacation pay whether or not he/she signs any release of claims against ES. Employee also understands that other than the Termination Income Benefit he/she is not entitled to any future commissions, compensation or other monies whatsoever from ES subsequent to the execution of this release.

3. As consideration for the Termination Income Benefit described above, Employee and his/her representatives hereby unconditionally release and forever discharge ES, its current and/or former shareholders, directors, officers, employees, agents, successors and assigns, and any related corporations and/or entities and their current and/or former shareholders, directors, officers, employees, agents, successors and assigns, from any and all loss, liability, claims, demands, causes of action or suits of any type related directly or indirectly to Employee's employment with ES and/or Employee's termination of his/her employment with ES, including claims for wrongful termination, constructive wrongful termination, employment discrimination, harassment, defamation, fraud, misrepresentation, breach of contract, infliction of emotional distress, or for violation of federal or state discrimination laws or any other claim, including those arising under the laws of the State of California.

4. This Paragraph of the Agreement exclusively addresses Employee's release of claims arising under federal law involving discrimination on the basis of age in employment (age forty and above). This paragraph is provided separately, in compliance with federal law, including but not limited to the Age Discrimination Employment Act of 1967 ("ADEA") and the Older Workers' Benefit Protection Act

James E. Smith, Jr.
May 17, 2010
Page 2 of 4

of 1990, to ensure that Employee's release of age discrimination claims under federal law (the "ADEA Release") is knowing and voluntary on the part of Employee.

    a. Employee has been advised, in writing, to discuss this Agreement with an attorney, and to the extent, if any, that Employee has desired, Employee has done so; that Employee has been given twenty-one (21) days from receipt of this Agreement to review and consider the ADEA Release before signing it, and Employee understands that he/she may use as much of this twenty-one (21) day period as he/she wishes prior to releasing the ADEA claims; that no promise, representation, warranty or agreement not contained herein has been made by or with anyone to cause him/her to sign this Agreement; that this Agreement has been read and interpreted for Employee by his/her counsel, and that he/she fully understands and is aware of its meaning, intent, content and legal effect; and that this release is executed voluntarily and free of any duress or coercion. Employee further understands and agrees that he/she is not waiving any rights or claims under the ADEA which might arise after the date this Agreement is signed.

    b. The Parties acknowledge that for a period of seven (7) days following the execution of this Agreement, Employee may revoke the ADEA Release, and the ADEA Release shall not become effective or enforceable until the revocation period has expired. This ADEA Release shall become effective eight (8) days after it has been signed by the Parties, and in the event the Parties do not sign on the same date, then this ADEA Release shall become effective eight (8) days after the date it is signed by Employee. Should the ADEA Release be revoked during said seven (7) day period, all other terms of this Agreement shall become null and void and shall no longer be in effect.

    c. In exchange for the consideration specified above, which is consideration Employee would otherwise not be entitled to except for signing this Agreement and releasing his/her ADEA claims, Employee does hereby unconditionally, irrevocably and absolutely release and discharge ES, its current and/or former owners, directors, officers, employees, agents, attorneys, stockholders, insurers, divisions, successors and assigns, and any related holding, parent, sister or subsidiary corporations from any and all loss, liability, claims, demands, causes of action or suits of any type arising under ADEA.

5. Employee specifically releases all claims, including any he/she is not currently aware of. Employee expressly waives all of the benefits and rights granted to him/her pursuant to California Civil Code section 1542, which reads as follows:

    A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OF OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

6. Employee specifically acknowledges that he/she has not filed any complaints, claims or actions against ES with any state, federal, or local agency or court, and Employee irrevocably agrees not to bring, continue or maintain any claim or legal proceeding against ES before any court, administrative agency or any other forum with respect to any of the aforementioned Released Claims.

7. ES and Employee will keep the terms of this agreement confidential. Neither party will disclose the terms to anyone without the approval of the other party, except that either party may disclose this information to its attorneys, tax consultants, and spouse if applicable, or if applicable, by court order.

James E. Smith, Jr.
May 17, 2010
Page 3 of 4

8. Employee acknowledges and agrees that during his/her employment with ES, he/she has had access to trade secrets or other confidential or proprietary information which is or may be either applicable or related to the present or future business of ES or the business of its customers including but not limited to customer lists and information about customers developed through extensive time and effort and personal information about ES's principals and employees. Employee agrees that he/she will not disclose any such information, directly or indirectly, or use such information in any way at any time following his/her termination from ES. Employee further acknowledges that he/she has returned all Company property.

9. Employee agrees that he/she will not voluntarily provide information, documents, data or testimony to any other person or entity about ES and its business without ES's prior written consent. In the event a subpoena or other lawful process is properly served upon Employee requiring production or disclosure of information, documents, or data concerning ES, Employee shall immediately notify ES by telephone and in writing of such subpoena or process, and shall allow ES an opportunity to review any documents to be produced at a reasonable time and place prior to such production. To the extent any subpoena or process calls for testimony or statements from Employee, Employee will meet, telephonically or in person, with any such agents or attorneys as ES may designate concerning his/her response to the subpoena or process. Any such meeting shall be at a reasonable time and place mutually agreeable to Employee and ES and its agents. Nothing herein shall give ES the right to control or dictate the content of any statements or testimony given by Employee or the documents produced, or prohibit Employee from making factually accurate statements.

10. Employee agrees to cooperate with ES in the following ways:

    Employee shall cooperate with ES in responding to any investigation now pending or initiated in the future by any government agency. Employee also agrees to cooperate with ES in the defense of any action now pending or brought in the future by any third party against ES that relates in any way to Employee's acts or omissions while employed by ES. In addition, Employee agrees to cooperate with and make him/herself available on reasonable notice to ES and its attorneys for consultation and/or testimony concerning matters in which he/she was involved while employed by ES or about which he/she may have relevant information. In the event ES determines or requires any information or testimony from Employee in connection with any claim made against ES or investigation relating to ES's business matters, Employee agrees to appear at any administrative hearing, deposition, trial, mediation or arbitration or other proceeding. Employee also agrees to meet telephonically or in person with the agents or attorneys of ES prior to any hearing, trial, deposition, or other proceeding and to provide ES with any documents in his/her custody, possession or control.

11. Employee agrees that ES is not obligated to offer employment to him/her or to hire him/her in any capacity for any reason, regardless of the circumstances, at any time on or after the date of this Agreement. Employee further acknowledges that any such application for employment or consulting may be denied and agrees to waive any and all claims arising out of or related to the application and/or denial of such employment.

12. Employee represents that no promises other than those referred to in this Agreement were made to him/her and that this Agreement contains the entire Agreement between Employee and ES, and that the terms of these releases are contractual and not a mere recital. Any modification to this Agreement shall not be effective unless in writing and signed by both parties. This Agreement supersedes any

James E. Smith, Jr.
May 17, 2010
Page 4 of 4

---

and all prior agreements (oral or written) relating to Employee's employment with ES or the termination thereof, including the SEIA.

13. Should any part, term or provision of this Agreement be determined by any court or other tribunal to be illegal or invalid, this shall not affect the validity of the remaining terms and provisions of this Agreement. This Agreement shall not be construed as an admission by ES of any liability to Employee or of the violation by ES of any statute or legal or equitable obligation, and ES denies any such violation.

14. This Agreement shall be governed by the laws of the State of California.

15. In the event of any litigation to enforce any part of this Agreement, the prevailing party shall be entitled to an award of reasonable costs and attorneys' fees.

16. The parties and/or their respective attorneys have reviewed this Agreement, and the parties have had a full opportunity to negotiate its contents. The parties have read the foregoing Agreement and know its contents and fully understand it. The parties to this Agreement expressly waive any common law or statutory rule of construction that ambiguities should be construed against the drafter of this Agreement.

17. This Agreement may be executed in counterpart originals and each such counterpart shall be binding on all of the parties executing the Agreement as though one agreement had been signed by the parties.

18. You may accept this offer by signing and dating it below and returning the signed and dated acceptance to Catalina Shoate., at 225 Broadway, 18th Floor, San Diego, CA 92101 no later than 5:00 p.m., July 7, 2010.

Very truly yours,

Earl Scheib, Inc.

*[signature]*
John Schlich
President


   I have had an adequate opportunity to review this document away from Earl Scheib, Inc.'s premises and to consult anyone of my choice regarding it, including an independent attorney selected by me. I understand the contents of this letter, and I agree to all of its terms and conditions.


Dated: _____, 2010         *[signature]*
                                James E. Smith, Jr.

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
JAMES SMITH

## DEFENDANTS
EARL SCHEIB, INC., EARL SCHEIB REALTY CORP., and DOES 1-10, inclusive.

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant San Diego
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Law Offices of James P. Stoneman, II, 100 W. Foothill Blvd., Claremont, CA 91711, Telephone (909) 621-4987

Attorneys (If Known)
'10 CV 2367 L-BGS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | PERSONAL PROPERTY | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | LABOR | SOCIAL SECURITY | ☐ 810 Selective Service |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 791 Empl. Ret. Inc. Security Act | FEDERAL TAX SUITS | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | IMMIGRATION | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28:1331
Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 200,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____ DOCKET NUMBER _____

DATE 11-17-2010
SIGNATURE OF ATTORNEY OF RECORD James P. Stoneman II

FOR OFFICE USE ONLY
RECEIPT # 20316 AMOUNT 350.00 APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

CK MS 11/17/10

```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS020316
Cashier ID: msweaney
Transaction Date: 11/17/2010
Payer Name: JAMES STONEMAN
------------------------------------
CIVIL FILING FEE
 For: JAMES SMITH V EARL SCHEIB INC
 Case/Party: D-CAS-3-10-CV-002367-001
 Amount:       $350.00
------------------------------------
CHECK
 Check/Money Order Num: 4313
 Amt Tendered: $350.00
------------------------------------
Total Due:     $350.00
Total Tendered: $350.00
Change Amt:    $0.00


There will be a fee of $45.00
charged for any returned check.
```